**Carolyn W. BULLOCK, as City Treasurer for the City of Williamsport**

**v.**

**COUNTY OF LYCOMING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 7, 2004.

Decided Oct. 1, 2004.

Benjamin E. Landon, Williamsport, for appellant.

J. David Smith, Williamsport, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

County of Lycoming (County) appeals from an order by the Court of Common Pleas of Lycoming County (trial court) granting Carolyn Bullock's (Appellee) motion for a preliminary injunction and preliminarily enjoining the County from taking over the collection of its own taxes. We affirm.

Appellee is the elected treasurer for the City of Williamsport (City). She was reelected in 2003 to a four-year term, commencing on January 1, 2004. On November 26, 2003, Appellee was notified by the County that it intended to assume the duties of collecting taxes through its own agents and employees, beginning as of the 2004 tax year. On December 18, 2003, the County adopted a resolution that the duties and responsibilities of billing and collecting county taxes in the City were vested in the county treasurer as of January 1, 2004.

Appellee alleged that if the County wanted to assume the collection of its own taxes it was obligated to inform her on or before February 18, 2003. She argued that since the County failed to notify her of its intention, it was precluded from taking over the collection of its own taxes until the 2008 tax year.

The County filed preliminary objections to the complaint and Appellee filed a motion for a preliminary injunction. The trial court, in two separate orders issued on the same day, denied the preliminary objections of the County and granted the Appellee's request for a preliminary injunction. The County appealed both rulings to this Court. We quashed the appeal as interlocutory to the extent it sought review of the order overruling the preliminary objections. As such, we determined that the County's appeal is limited solely to review of the trial court's order granting a preliminary injunction. (R.R. at 47a).

The County argues that the trial court erred in its grant of a preliminary injunction for the following reasons: (1) Appellee is not entitled to injunctive relief because she led the County to believe she would cooperate with the transition; (2) the trial court improperly applied Section 1701.1(b) of The County Code,[1] 16 P.S. § 1701.1(b); (3) Appellee failed to establish the required elements of a preliminary injunction; and (4) Appellee lacks standing to bring this action.

■ Our standard of review of an order granting a preliminary injunction is whether or not the trial court abused its discretion. *Summit Towne Centre, Inc., v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995 (2003). We are to determine whether the evidence of record es-

tablishes reasonable grounds for the action of the trial court. "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]". *Summit Towne Centre, Inc.,* 573 Pa. at 645–46, 828 A.2d at 1000 (quoting *Roberts v. Board of Directors of School Dist. of City of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)).

■ The County first alleges that Appellee is not entitled to injunctive relief because she led the County to believe she would cooperate with the transition.

At the hearing before the trial court, Richard T. Nassberg, county commissioner and vice chairman of the board of commissioners, testified on behalf of the County. He stated that at a meeting on November 26, 2003, the County presented an analysis establishing that it could save approximately $40,000.00 per year if it assumed the duties of collecting its own taxes. He stated that Appellee suggested that she should remain as tax collector because she "provided a human face to government." (R.R. 112a). Mr. Nassberg testified that Mary Wolf, the mayor-elect, stated that she could not argue with the County that they could save money by assuming the collection duties and that she would cooperate with the transition. (R.R. 112a). The County also presented a letter from an assistant city solicitor which indicated that the City agreed to provide reasonable cooperation during the transition process. (R.R. at 79a).

The County argues that since the City agreed to cooperate in the transition and because Appellee did not specifically object

1. Act of August 9, 1955, P.L. 323, *added by* Section 1 of Act of January 26, 1966, P.L. (1965) 1621.

at the meeting, Appellee should be estopped from bringing this action.

We must first note that the City and Appellee were only informed of the County's intentions on November 26, 2003. The County adopted its resolution on December 18, 2003, and Appellee filed suit on January 22, 2004. Thus, the time period involved is very short.

■  Secondly, the County makes vague references to Appellee having "unclean hands." (County's brief at 11). The County believes that since Appellant did not specifically object to their proposal, she should be barred from bringing suit. Not surprisingly, the County fails to present this Court with any case law which would suggest that a party has "unclean hands" and is forever barred from bringing suit if they fail to immediately object to a proposed action. Additionally, Appellee's lawsuit is based on allegations that the County violated statutory law when it adopted its resolution. The doctrine of unclean hands stands for the proposition that an injury occurs where one is led to justifiably rely on the promises or representations of another. *Kreutzer v. Monterey County Herald Co.*, 560 Pa. 600, 747 A.2d 358 (2000). The County has not provided us with any case law which concludes that it should be permitted to justifiably rely on representations of others where its own actions are in violation of statutory law.

■  The County's second allegation of error is that the trial court improperly applied Section 1701.1(b) of The County Code. The trial court noted that Section 1701.1(b) provided as follows:

In counties of the third, fourth, fifth, sixth, seventh and eighth class, the coun-

ty commissioners may provide, by resolution, for the billing and collection of all county and county institution district taxes levied in third class cities. The county commissioners shall have the power and authority by resolution, to vest in the county treasurer the duties and responsibilities of billing and collecting county and county institution district taxes in third class cities. The resolution shall be adopted by the county no later than the first day for the circulation of nomination petitions for the office of tax collector within the county and shall take effect upon the first day of the next succeeding term of office of tax collector following adoption of the resolution.

The trial court determined that pursuant to Section 1701.1(b), the County had the authority to collect its own taxes, but was first obligated to notify Appellee no later than the first day for the circulation of nomination petitions for the office of tax collector within the County and, also, the transition could not take effect until the succeeding term of office of the tax collector.[2] It is not disputed that the first day of circulation for nomination petitions for Appellee's position was February 18, 2003. As such, the trial court determined that the County obviously failed to meet the deadline set by Section 1701.1(b).

The trial court noted that Appellee was a "city treasurer," as opposed to the term "tax collector" used in Section 1701.1(b). However, the trial court concluded that the terms were interchangeable based on Section 2 of the Local Tax Collection Law,[3] 72 P.S. § 5511.2. Section 2 provides the following definition:

'Tax collector' or 'Elected Tax Collector' shall include every person duly elected

---

**2.** The parties agree that the City is a Third Class City and the County is of the Fifth Class.

**3.** Act of May 25, 1945, P.L. 1050, *as amended.*

or appointed to collect all taxes, levied by any political subdivision included in the provisions of this act, including the treasurers of cities of the third class and of townships of the first class in their capacity as treasurers, and county collectors of taxes in counties of the third, fourth, fifth, sixth, seventh and eighth class who have been designated to collect county and institution district taxes in cities of the third class. . . .

Despite the above noted statutory language, the County argues that it is not subject to the notice requirements. The County instead cites to Section 1701.1(b.1), of The County Code, which provides as follows:

> In counties of the third, fourth, fifth, sixth, seventh and eighth class in which the county commissioners provide, by resolution, for the billing and collection of all county taxes levied in municipalities existing and organized under the 'Home Rule Charter and Optional Plans Law,' that have eliminated the elective office of tax collector, the county commissioners shall have the power and authority, by resolution, to vest in the county treasurer the duties and responsibilities of billing and collecting taxes.

It is unclear why the County believes that Section 1701(b.1) would apply in this case as that Section specifically applies to municipalities under the Home Rule Charter and Optional Plans Law (Law).[4] The County does not explain why it believes its municipality comes under the Law or provide any evidence in support of this claim.

■■ The County's third allegation of error is that Appellee failed to establish two of the elements of a preliminary injunction. In order to receive a preliminary injunction, the party seeking the injunction must establish that the injunction is necessary to prevent immediate and irreparable harm; that the harm could not be adequately compensated by damages; that a greater injury would result in denying the injunction than by granting it; that the grant of the injunction would restore the parties to their original status; and that they are likely to prevail on the merits. *Summit Towne Centre, Inc.*, 573 Pa. at 646–47, 828 A.2d at 1001. The County argues that Appellee did not establish that she would incur irreparable harm and that the Appellee's claim is contractual in nature.

The trial court noted that in *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947), the Pennsylvania Supreme Court concluded that operating in violation of a statute constituted an irreparable injury authorizing a grant of a preliminary injunction. *See also Central Dauphin Education Association v. Central Dauphin School District*, 792 A.2d 691 (Pa.Cmwlth.2001). As such, we conclude that as Appellee has established a cognizable claim that the County violated a statute, she has established irreparable harm. As to the contractual claim, the County argues that Appellee's claim is contractual in nature, yet fails to point to any contract under which Appellee could have sued or any contractual issues that could have been raised.

The County's final allegation of error is that Appellee lacks standing to bring this action. The County admits that it did not raise the issue of standing in response to Appellee's request for a preliminary injunction. However, the County argues that we should consider the issue because Appellee's lack of standing deprived the trial court of jurisdiction over the subject matter of the dispute.

---

4. 53 Pa.C.S. § 2901–2983.

Not surprisingly, the County failed to cite case law in support of its claim that standing is a jurisdictional issue. To the contrary, the issue of standing is not jurisdictional and failure to raise it in preliminary objections waives the issue in future proceedings. *Society Created to Reduce Urban Blight (Scrub) v. Zoning Board of Adjustment of the City and County of Philadelphia,* 682 A.2d 1 (Pa.Cmwlth. 1996); *see also Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority,* 160 Pa.Cmwlth. 544, 635 A.2d 691 (1993). As the issue of standing is not properly before the Court at this time, we will not consider it.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 1st day of October, 2004, the order of the Court of Common Pleas of Lycoming County is affirmed.